**SOUTHWEST DAIRY PRODUCTS CO. v. COFFEE & MOORE.**

**No. 6718.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1932.

Clyde E. Thomas, of Big Spring, Tex., for appellant.

J. L. Sullivan, of Big Spring, Tex., and E. M. Overshiner and Harry Tom King, both of Abilene, Tex., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Coffee & Moore sued Southwest Dairy Products Company in a state court for damages for breach of contract. The suit was duly removed to the United States District Court because of diversity of citizenship, and on trial the plaintiffs got a verdict and judgment, defendant appealing. There are four assignments of error, two based on the overruling respectively of a general and a special demurrer to the amended petition and two upon charges of the court. The appellees move that they be stricken for noncompliance with the rules of this court. Rule XI reads in part: "When the error alleged is to the charge of the court the assignment of errors

shall set out the part referred to in totidem verbis, whether it be in instructions given or in instructions refused." The two assignments referring to the charge make no effort to comply with this rule. We have attempted to look to the bill of exceptions to see if plain error was apparent. Instead of a proper document distinctly pointing out the parts of the charge objected to, the objections made, and exceptions timely taken and allowed, together with so much of the evidence only as related thereto, we find a report covering fifty-two pages of evidence, certified by the judge but containing no reference to the charge. There is also an uncertified document purporting to contain the entire charge of the court, followed by some quite vague objections to it. There is nothing that we can consider touching the charge.

■ The assignments relating to the demurrers we are able to understand by reference to the demurrers themselves, and will consider them. There is in the record no order overruling the demurrers, but by bills of exception taken thereon (unnecessarily, Nalle v. Oyster, 230 U. S. 177, 33 S. Ct. 1043, 57 L. Ed. 1439), it appears over the signature of the judge that the demurrers were overruled. This is enough.

■ Under the general demurrer the only insufficiency in the petition relied on is a want of mutuality in the contract sued on, in that it really bound the plaintiffs to nothing. The allegations material to this point are: "On or about July 1st, 1930, plaintiffs owned and operated a dairy farm near the city of Big Springs, Howard County, Texas, and were engaged in producing sweet milk and dairy products, and that on or about said date the defendant, acting through T. W. Long, thereunto duly authorized, entered into a certain oral contract with plaintiffs by the terms of which plaintiffs agreed to sell and deliver to the defendant at its place of business in the city of Big Springs all the sweet milk produced from said farm, not to exceed 150 gallons per day, beginning at said date and extending for the period of one year thereafter, and defendant agreed to buy said milk and promised to pay therefor," as further set out. It is argued that plaintiffs did not bind themselves to produce any milk, and hence did not bind themselves to sell any, and there was therefore no consideration for the promise of the defendant to buy.

The contract related to the output of milk of an established dairy farm in actual operation. A contract by which one party agrees to buy and the other to sell the output or product for a certain time of a certain mill or factory operated by the latter is not invalid for want of certainty or mutuality, as it impliedly obligates the seller to continue the operation of the mill or factory, or at least requires him to sell whatever product there may be. 23 R. C. L., Sales, § 85; 55 C. J., Sales, § 149, at page 196. This case is within that principle.

■ The special demurrer attacks the claim of the petition to recover the anticipated profits in producing and selling the milk which the defendant, by an anticipatory breach of contract, stopped while the contract had yet six months to run, the plaintiffs averring themselves to have been able and willing and offering to perform. The measure of damages contended for by appellant, to wit, the difference in value between the contract price and market price at the time of breach is applicable to goods actually produced, tendered, and rejected where there is a market price, but it is inappropriate to a case of anticipatory breach where immediate suit for damages is elected instead of keeping the contract in force and continuing to tender performance. The subject is discussed exhaustively in Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 788, 44 L. Ed. 953, and the conclusion thus announced: "If a vendor is to manufacture goods and during the process of manufacture the contract is repudiated, he is not bound to complete the manufacture and estimate his damages by the difference between the market price and the contract price, but the measure of damage is the difference between the contract price and the cost of performance." To the same effect is Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967. There is of course the usual duty to mitigate damages, but the petition alleges that plaintiffs unsuccessfully sought another wholesale market for their product and had to retail it at such an expense that there was an actual loss rather than the justly anticipated profit which was sued for. Other authorities on the subject of damages to be allowed in such circumstances are collected in 24 R. C. L., Sales, § 388, and 55 C. J., Sales, § 1053.

Judgment affirmed.